Mr. Justice SWAYNE
delivered the opinion of the court.
It would be a waste of time to analyze the conflicting testimony, to weigh against each other the parts which are in conflict, or to attempt to explain or reconcile their antagonisms. It will be sufficient to indicate the conclusions at which we have arrived.
The expediente of Miranda was found among the proper archives. It is referred to in Jimeno’s Index. The title never passed into a formal grant by the governor, but it is shown that this arose from the illness of Miranda and the disturbed condition of the country. The record is wholly silent as to any objection by the governor or from any other quarter. Ortega testified that he was never personally in possession. It is clearly proved that the possession of Miranda commenced as early as 1838, and continued from that time. The petition of Bojorques in 1844, and the grant to him in 1845; the petition of Padilla in 1844, and the accompanying map, and the diseño of the rancho Olimpale, all refer to the rancho in controversy as “the land of Juan Miranda.” These documents show that Miranda was regarded in the neighborhood as the owner, and not as a tenant. We are entirely satisfied, from the evidence found in the record, that he held in his own right and not vicarious"^ for Ortega. The petition of those claiming the title of Miranda was withdrawn from before the Board of Land Commissioners. Why, does not appear. Whatever the cause, its withdrawal cannot lessen the light which the facts relating to it throw upon the merits of the claim of Ortega.
The expediente of Ortega is confronted by strong suspicions of its bona -files. There is no trace of it among the proper archives. It does not appear that any paper belonging to it was ever in any public office before the petition in tnis case was filed by the appellant’s intestate. The Mexicans of the Spanish race, like their progenitors, were a formal *681 people, and their officials were usually formal and careful in the administration of their public affairs. Dull archive evidence exists in the case of Miranda. Its absence in this case is not satisfactorily accounted for.
Ortega abandoned his wife in 1843, and went to Oregon. He was poor and had been so for years. It does not appear that, from the time of the concession to the period of his departure, he made the slightest effort to consummate his title. He returned in 1847. There is reason to believe that when he left the country he intended finally to abandon his claim, if he had not done so before, and that such was the understanding of the Mexican authorities.
It appears that the order of reference made by the governor, which is found in the margin of the petition, was originally dated in 1841, and that this date was subsequently changed to 1840 with ink of a different color. A clerical mistake in writing the date originally, by antedating it a year, is unnatural and improbable. As it then stood it was subsequent in date to the report for which it called. It has been suggested that 1841 was the true and proper date, and that the concession was made after the return of Ortega from Oregon, and that it was antedated in 1840, — the writer not observing that the order of reference was dated in 1841,— and that, upon this fact being discovered, the date of the reference was changed to cure the discrepancy. The alteration is unexplained and unaccounted for. The evidence leaves us in the dark as to the time, the motive, and the circumstances.
It seems to be admitted that the diseño of Ortega and that of Miranda were prepared by the same hand and at the same time. Alvarado made the order of reference at Monterey on the 20th of June, 1840, and the order of concession at the same place on the 10th of August, 1840, or 1841. In his last deposition this passage occurs:
“Question. You have said that Ortega twice presented himself to you in Monterey, in 1840, in relation to this grant; state what papers, if any, he presented to you on the occasion of his first visit, and what papers on the occasion of his second visit ?
*682 “Answer. My recollection is that he brought with him each time the same papers — that is, the petition; but the first time without any map; the second time the petition and diseño together. He might have come other times, but I only recollect those two times.”
Ortega testified to the same effect as to the diseño.
That both are mistaken upon the subject is shown by the concession. In that instrument, which was given at the second interview between them, Alvarado says: “ He” (Ortega) “ shall make a map as required by law, which he will present opportunely.” There was, then, no map present at that time. When was it prepared and added to the other papers ? It is claimed, on behalf of the United States, that it was made when the diseño of Miranda was prepared in 1844, and came into the hands of Ortega by some means unexplained after his return from Oregon. Upon this subject, as in regard to the altered date of the concession, the evidence is inconclusive and unsatisfactory. The obscurity is increased by the character of some of the leading witnesses who have testified in support of the claim. But the solution of these difiicultiés is not necessary to the determination of the case. It has been held by this court, in a long and unbroken line of adjudications, that where there is no archive evidence, and its absence is unaccounted for, and there has been no such possession as raises an equity in behalf of the party, and especially where, in addition, the expediente produced is tainted with suspicions of fraud, the claim must be rejected. We feel no disposition to relax the rule, and it is fatal to the case of the appellant.
Decree affirmed.